UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

April 29, 2014

LETTER TO COUNSEL:

    RE:    *William B. Braxton v. Commissioner, Social Security Administration*;
              Civil No. SAG-13-2259

Dear Counsel:

On August 2, 2013, the Plaintiff, William B. Braxton, petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 14, 16). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). I will deny Mr. Braxton's motion and grant the Commissioner's motion. This letter explains my rationale.

The procedural history in this case is lengthy. Mr. Braxton filed his claims for DIB and SSI on February 28, 2007, alleging a disability onset date of January 15, 2004. (Tr. 111–17). His claims were denied initially and on reconsideration. (Tr. 72–79, Tr. 81–82). A hearing was held on April 29, 2009 before an Administrative Law Judge ("ALJ"). (Tr. 40–67). Following the hearing, on August 5, 2009, the ALJ determined that Mr. Braxton was not disabled during the relevant time frame. (Tr. 12–18). The Appeals Council denied Mr. Braxton's request for review (Tr. 3–6), and Mr. Braxton sought judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). On July 5, 2011, this Court remanded Mr. Braxton's claims to the Commissioner, finding that the ALJ failed to analyze Mr. Braxton's osteoarthritis of the knees and peripheral neuropathy. (Tr. 391–94). A second hearing was held on May 2, 2012 (Tr. 364–90), and on July 27, 2012, the ALJ determined for a second time that Mr. Braxton was not disabled during the relevant time frame. (Tr. 402–18). The Appeals Council declined to assume jurisdiction (Tr. 356–59), so the ALJ's 2012 decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Braxton suffered from the severe impairments of diabetes, essential hypertension, bilateral knee osteoarthritis, status post arthroscopy of the left knee, peripheral neuropathy, and hernias. (Tr. 405). Despite these impairments, the ALJ determined that Mr. Braxton retained the residual functional capacity ("RFC") to "perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can only occasionally push and pull with the left lower extremity; only occasionally climb ladders, ropes, and scaffolds; and must avoid concentrated exposure to extreme cold, vibration, and hazards." (Tr. 411). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Braxton could perform past relevant work as a housekeeper, and that he was not therefore disabled. (Tr. 417).

*William B. Braxton v. Commissioner, Social Security Administration*;
Civil No. SAG-13-2259
April 29, 2014
Page 2

Mr. Braxton presents three primary arguments on appeal. First, Mr. Braxton argues that the ALJ improperly weighed two medical opinions. Second, he disagrees with the ALJ's RFC assessment and argues that it was based on an incorrect adverse credibility finding. Third, Mr. Braxton contends that the ALJ failed to inquire into the demands of his past relevant work before concluding that he was capable of performing that work.

Mr. Braxton first argues that the ALJ should not have rejected the April, 2012 Physical RFC Questionnaire completed by Dr. Green, a treating physician. Dr. Green opined that Mr. Braxton's impairments would cause him to be absent from work twice a month, and that Mr. Braxton would require two 15-minute rest periods in an eight-hour day. (Tr. 535–36). Dr. Green also opined that Mr. Braxton could sit 30 minutes at one time, stand 15 minutes at one time, and never lift more than 20 or 50 pounds. (Tr. 536–37). The ALJ must generally give more weight to a treating source's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6); 416.927(c)(1)–(6).

The ALJ cited several reasons for according the opinion little weight, all of which are supported by substantial evidence in the record. The ALJ noted the brief treatment history, which consisted of only a "few" visits with Dr. Green in the year prior to her opinion. (Tr. 416). Dr. Green's treatment of Mr. Braxton consisted largely of medication management, which the ALJ noted was inconsistent with Dr. Green's conclusion that Mr. Braxton's impairments were disabling. (Tr. 416). Moreover, the ALJ pointed out that Dr. Green's opinion was not supported by other medical evidence of record, namely Dr. Desai's treatment notes, which demonstrated that Mr. Braxton's diabetes generally improved with medication, but that he was frequently non-compliant. *See* (Tr. 416–17) (*citing* Tr. 333–35; 344, 346, 348, 350–51, 353). In fact, Dr. Green's own notes demonstrate that Mr. Braxton did not consistently take his medication. *See* (Tr. 526) (noting that Mr. Braxton "did not know he had to refill his clonidine and he has been out for over one month. Also admits to noncompliance with diet"); (Tr. 533) (noting Mr. Braxton "did not take his meds this morning").

Likewise, the ALJ's decision to accord "significant weight" to a September, 2008 opinion from treating physician Dr. Desai is supported by substantial evidence. In a treatment record, Dr. Desai opined that Mr. Braxton "could work if his sugars and BP were better controlled." (Tr. 321). As noted above, the medical evidence of record demonstrates that Mr. Braxton's diabetes was uncontrolled due to non-compliance. The ALJ properly reviewed the medical findings and other evidence and found that Dr. Desai's opinion was "supported by evidence and explanation" and "consistent with and not contradicted by the record as a whole." (Tr. 416). Accordingly, remand is not warranted.

Next, Mr. Braxton argues that the ALJ failed to consider his subjective complaints of

pain resulting from peripheral neuropathy and his osteoarthritis, both of which the ALJ deemed "severe impairments." Pl.'s Mot. 14–17. Mr. Braxton suggests that the designation of his impairments as severe merited specific restrictions in the RFC assessment. The "[p]laintiff's burden of showing a severe impairment at step two is only a 'de minimis screening device used to dispose of groundless claims.' " *Taylor v. Astrue*, No. BPG-11-032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012) (quoting *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)). An ALJ may "find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.* Here, the ALJ discussed the records evidencing Mr. Braxton's osteoarthritis and peripheral neuropathy. *See* (Tr. 405–06). However, despite finding that the impairments were "severe," the ALJ did not find that they prohibited Mr. Braxton from performing medium work. The ALJ cited specific evidence from the medical record demonstrating that Mr. Braxton's complaints of knee pain and tingling in the hands and feet were inconsistent and contradicted by, on average, normal physical examinations. (Tr. 413–14). The ALJ noted that Mr. Braxton did not complain of knee problems or tingling of the hands and feet in late 2007. (Tr. 413) (*citing* Tr. 350, 353–55). Records from Dr. Sherman showed that he had no knee pathology on examination in 2008 and 2009, and he denied any tingling of either foot. (Tr. 414) (*citing* Tr. 299, 310, 312, 316, 318, 324, 326, 328, 331, 334, 339, 344, 346). The ALJ also noted that Dr. Desai's treatment records lacked any complaints of knee pain or tingling sensations in the extremities. *Id.* at 414. Thus, it is clear that the ALJ found that Mr. Braxton's osteoarthritis and peripheral neuropathy were not disabling. That finding is supported by substantial evidence and will not be disturbed.

Mr. Braxton also claims that the ALJ failed to abide by the two-part test for evaluating a claimant's allegations of pain. Pl.'s Mot. 15–17. The first prong of this test requires a determination that there is objective medical evidence of a medical impairment reasonably likely to cause the pain alleged by the claimant. *Craig,* 76 F.3d at 594. The second prong requires the ALJ to consider "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." *Id.* at 595. The ALJ followed that process in this case and provided an analysis nearly four pages long. *See* (Tr. 411–16). As described above, the ALJ cited to specific evidence from the medical record demonstrating the inconsistencies between Mr. Braxton's subjective complaints and the longitudinal medical record. Therefore, remand on this argument is unnecessary.

Finally, Mr. Braxton argues that the ALJ's finding at step four that he could perform past relevant work as a housekeeper did not include a specific finding of fact as to the physical and mental demands of housekeeping work. Pl.'s Mot. 17–20. I disagree. The ALJ need not adduce VE testimony to decide a case at step four, but may rely on information about the past relevant work that is provided by the claimant. *See* 20 C.F.R. §§ 404.1560; 416.960. SSR 82-62 requires that the ALJ consider the requirements of a claimant's past relevant work.

> Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2)

> medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82–62, at *3. The ALJ properly considered Mr. Braxton's testimony from both hearings regarding the requirements of his hospital cleaning work. *See* (Tr. 48–50, 374–77). Mr. Braxton testified that he lifted nearly 40 to 50 pounds, and that he also collected trash, buffed floors, and cleaned rooms. (Tr. 48–50; 374–76). The VE was present for Mr. Braxton's testimony. (Tr. 366). The VE testified that Mr. Braxton's work was performed at the medium exertional level, according to the DOT. (Tr. 387). The ALJ's finding that Mr. Braxton could perform his past relevant work was based on the RFC assessment, which considered the medical evidence of record demonstrating that Mr. Braxton was fully capable of performing medium work with certain limitations. *See* (Tr. 417); *see also* (Tr. 172–79, 192–99) (Physical RFC Assessments).

I also do not find that the ALJ failed in his responsibility to ask whether a conflict existed between the VE testimony and the DOT. Pl.'s Mot. 18–19. SSR 00-04p provides that, in the instance of an apparent unresolved conflict between VE evidence and the DOT, the ALJ "must elicit a reasonable explanation for the conflict." SSR 00-04p, at *3. I am not persuaded that an unresolved conflict exists here. Mr. Braxton contends that his past relevant work was performed at the "heavy" exertional level. Pl.'s Mot. 19–20. However, that argument is based on a lone Disability Report stating that the heaviest weight Mr. Braxton lifted as a housekeeper was 80 pounds. (Tr. 132). As noted above, Mr. Braxton testified at both hearings that he lifted up to 50 pounds and performed routine housekeeping work. Accordingly, remand is not warranted.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 14) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 16) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge